1  COLIN O'NEILL (SBN 242428)
   SHERMAN & SHERMAN
2  A Professional Law Corporation
   2115 Main Street
3  Santa Monica, CA    90405-2215
   (310) 399-3259 (O)
4  (310) 392-9029 (F)1

5  Attorney for Defendant
   STEELE SMITH

6

7                  **UNITED STATES DISTRICT COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9

10 UNITED STATES OF AMERICA,           )    CASE NO.: SA CR 07-264-CJC
                                       )
11                      Plaintiff,     )
                                       )    **NOTICE OF MOTION AND**
12      vs.                            )    **MOTION TO SUPPRESS;**
                                       )    **MOTION TO QUASH**
13 STEELE SMITH,                       )    **WARRANT; DEMAND FOR**
                                       )    **EVIDENTIARY HEARING**
14                      Defendant.     )    **PURSUANT TO FRANKS V.**
                                       )    **DELAWARE; POINTS AND**
15                                     )    **AUTHORITIES IN SUPPORT**
                                       )    **THEREOF**
16                                     )
                                       )    Date:      October 19, 2009
17                                     )    Time:      9:0 a.m.
                                       )    Crtrm:     Hon. Cormac J. Carney
18                                     )
                                       )
19 ——————————————————————————          )

20      TO THE HONORABLE COURT AND TO ALL ATTORNEYS OF

21 RECORD:

22      PLEASE TAKE NOTICE that on October 19, 2009, at 9:00 a.m., or as soon

23 thereafter as counsel may be heard in the courtroom of the Honorable Cormac J.

24 Carney, United States District Judge, defendant, Steele Smith, by and through his

25 attorney of record, will, and hereby does, respectfully move this Court for an

26 order suppressing all contraband and other items seized following the executions

27 of search warrants at 1506 S. Euclid St., Fullerton, California ("Euclid Premises"),

28 and at 606 West Gage St., Fullerton, California ("Gage Premises").

                                       1

1

2

3

     This motion is based upon this Notice of Motion, the attached memorandum of points and authorities, all of the documents and records on file in this matter, and any such further evidence as may be adduced at the hearing on this matter.

4

5

DATED:    September 21, 2009

Respectfully submitted,
SHERMAN & SHERMAN
A Professional law Corporation

/s/ C.O'Neill

6

7

8

By: _____

COLIN O'NEILL
Attorneys for Defendant
STEELE SMITH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . .  3

    I.     STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

          A.    Search Warrant Affidavit . . . . . . . . . . . . . . . . . . . . . . . . .  3

               1.    Euclid Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

               2.    Gage Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

          B.    An Independent Investigation Resulted in Facts
              Inconsistent with the Officer's Affidavit  . . . . . . . . . . . . . . .  5

    II.    MR. SMITH HAD A REASONABLE EXPECTATION
        OF PRIVACY IN THE PREMISES  . . . . . . . . . . . . . . . . . . . . . . .  6

          A.    The Officers Violated Mr. Smith's Constitutional
              Protection Against Unreasonable Searches and Seizures
              When they "Looked Through a Hole in the
              Stucco Wall." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    III.   PURSUANT TO FRANKS V. DELAWARE, AN
        EVIDENTIARY HEARING IS REQUIRED TO PROTECT
        MR. SMITH'S FOURTH AMENDMENT RIGHTS
        BECAUSE THE SEARCH WARRANT RELIED ON
        SEVERAL INTENTIONAL OR RECKLESS FALSE
        STATEMENTS, WITHOUT WHICH PROBABLE
        CAUSE COULD NOT HAVE BEEN ESTABLISHED . . . . . . . . .  10

          A.    The Instant Affidavit Contains Intentionally or
              Recklessly False Statements . . . . . . . . . . . . . . . . . . . . . . . .  10

               1.    The Address Officer Kolodzey Used to
                    Compare Electrical Usage Does Not Exist . . . . . . . . .  10

               2.    Electrical Usage was Not Excessive . . . . . . . . . . . . . .  11

               3.    Affiant did not Smell Marijuana . . . . . . . . . . . . . . . .  11

B.  A Franks Hearing is Required Because the
Affidavit Purged of its Falsities Would not be
Sufficient to Support a Finding of Probable Cause  . . . . . . .  11

1.  Facts stated in the Officer's affidavit do not
corroborate CS-1's claims as to the Euclid
Premises  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

2.  The Confidential Informant's information
could not have been corroborated as to the
Gage Premises because he/she did not provide any . .  14

C.  Good Faith Does Not Apply to Warrants Where
There is an Intentional Misrepresentation or
Reckless Disregard for the Truth in an Affidavit  . . . . . . . . .  15

IV.  AFTER A SUBSTANTIAL PRELIMINARY SHOWING,
THE INSTANT CASE REQUIRES A FRANKS HEARING  . . . .  16

V.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

4

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page**

Brinegar v. United States, 338 U.S. 160 (1949) . . . . . . . . . . . . . . . . . . . . . . . . .  14

California v. Ciraolo, 436 U.S. 207 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Carroll v. United States, 267 U.S. 132 (1925) . . . . . . . . . . . . . . . . . . . . . . . . .  14

Franks v. Delaware, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . .  10, 11, 13, 15, 16

Henry v. United States, 361 U.S. 98 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Hudson v.Palmer, 468 U.S. 517 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Illinois v. Gates, 462 U.S. 564 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 13

Miranda v. Arizona, 437 U.S. 385 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

New Jersey v. T.L.O., 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Olmstead v. United States, 48 U.S. 564 (1928) . . . . . . . . . . . . . . . . . . . . . . . .  11

Payton v. New York, 445 U.S. 572 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Rakas v. Illinois, 439 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

United States v. Crews, 502 F.3d 1130 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . .  15

United States v. Howard, 758 F.2d 1318 (9th Cir. 1985) . . . . . . . . . . . . . . . . .  14

United States v. Johnson, 256 F.3d 895 (9th Cir. 2001) . . . . . . . . . . . . . . . . . .  7

United States v. Leon, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . .  14, 15, 16

United States v. McKeever, 5 F.3d 863 (5th Cir. 1993) . . . . . . . . . . . . . . . . .  7, 8

United States v. Pinion, 800 F.2d  976 (9th Cir. 1986) . . . . . . . . . . . . . . . . . .  14

United States v. Stanert, 762 F.2d 775 (9th Cir. 1985) . . . . . . . . . . . . . . .  10, 16

Wong Sun v. United States, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . .  9

**State Cases**

People v. Cook, 41 Cal. 3d 373 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 9

People v. Lovelace,  116 Cal.App. 3d 541 (1981) . . . . . . . . . . . . . . . . . . . . . . .  8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.

### STATEMENT OF THE CASE

**A.**

### <u>Search Warrant Affidavit</u>

The Affidavit in Support of Search warrant submitted in this matter (attached hereto as Exhibit "A") indicates, in pertinent part, as follows:

**1.     Euclid Premises**

In the fall of 2007, Drug Enforcement Administration Special Agent Joseph Kolodzey spoke with a confidential informant (CS-1) who told him that "Steele" was cultivating marijuana at 1506 S. Euclid St. In Fullerton. California. (Exhibit "A" at par. 7) CS-1 also provided Agent Kolodzey with the name "Alexander," who CS-1 said was also involved in marijuana cultivation at that address. (Exhibit "A" at par. 8)

Upon visiting the Euclid Premises on October 16, 2007, agents observed a dark blue Ford Explorer in the driveway, which was registered to Alexander Valentine. (Exhibit "A" at par. 9) The following day, agents conducted additional surveillance and observed that the front of the Euclid Premises contained four windows, two on either side of the front door. The two windows on the north side of the front door contained vertical blinds on the inside of the windows that were partially open, and the two windows south of the front door were blocked with what appeared to be solid white covered barriers placed on the inside of the windows. (See Exhibit "A" at par. 10(a)(i).)

The agents then proceeded to an alley at the rear of the Euclid Premises where they observed a window that was blocked with a solid silver foil-like barrier placed on the inside of the window. (Exhibit "A" at par. 10(b).)

Agents next **looked through a hole in a stucco wall** to observe approximately ten bags of Premier Pro-Mix potting soil. (Exhibit "A" at par. 10(c).)

On October 15, 2007, Drug Enforcement Administration Special Agent Sivakumaran served an administrative subpoena on Southern California Edison requesting utility information on the Euclid Premises. The usage reports showed the following total service account charges for the billing cycles ending September, August and July 2007, respectively: $1,234.19, $1,732.10 and $1,620.04. The affidavit then goes on to state that "[t]he usage history for a neighboring location (1403 S. Euclid st., Fullerton, CA) showed the following usage history over the same respective time frame: $49.09, $47.02 and $46.05." (Exhibit "A" at par. 12(b).)

Based on the foregoing, a warrant was issued to search the Euclid Premises for marijuana cultivation and related evidence.

### 2.    Gage Premises

The confidential informant never told agents that Mr. Smith or anybody else was cultivating marijuana at the Gage Premises. Instead, agents acted on a hunch using a cross-referenced address.

Specifically, the utilities for the Euclid Premises were in the name of Theresa Smith, and on October 17, 2007, agents learned through the California Department of Motor Vehicles that Ms. Smith had a mailing address of 606 W. Gage St., in Fullerton, California. Agents then served an administrative subpoena on Southern California Edison requesting utility information regarding the Gage Premises. The usage reports showed the following total service account charges for the billing cycles ending during September, August and July 2007, respectively: $1,479.68, $1,519.33 and $888.20. The affidavit then goes on to state that "[t]he Euclid Premise and the Gage Premise are located within the same neighborhood, therefore, both

Target Premises are being compared to the 1403 S. Euclid St., Fullerton, CA location (same respective time frame: $49.09, $47.02, and $46.05)."
(Exhibit "A" at par. 13(b).)

On October 19, 2009, agents conducted a trash search at the Gage premises, which yielded two green leaves consistent with marijuana leaves. A subsequent presumptive filed test yielded a positive result for the presence of marijuana. Agents also found two plastic bags with different varieties of marijuana written on them.

Based on the foregoing, a warrant was issued to search the Gage premises for marijuana cultivation and related evidence.

**B.**

**An Independent Investigation Resulted in Facts Inconsistent with the Officer's Affidavit.**

Defense conducted an independent investigation into the facts described in the affidavit and found several inconsistencies.

The residence Officer Kolodzey used to compare utility bills to both the Euclid Premises and the Gage Premises, 1406 S. Euclid St., is not a valid address.  Defense conducted a physical search of Euclid St. and found no such home exists.  Moreover, defense conducted various Internet searches, including a real estate search engine and Google Earth, none of which could find the address.  Finally, defense hired a private investigator to use his resources to try and locate the premise and his search was similarly unsuccessful.  Accordingly, after a thorough investigation, it is clear that there is no record of this address.

Additionally, there is no "hole in the stucco wall".  Attached as Exhibit "B," are photos of the stucco wall on the south side of the Euclid Premises.  As is clear from the photos, there is no hole in the wall.  There is, however, a small vertical slit between the stucco wall and the mesh gate

8

blocking the driveway.

## II.

## MR. SMITH HAD A REASONABLE EXPECTATION OF PRIVACY IN THE PREMISES

The United States Supreme Court has held that the question of "standing" cannot be considered distinct from the merits of a defendant's Fourth Amendment claim.  Rakas v. Illinois, 439 U.S. 128, 158. (1978).  To assert and receive the protection of the Fourth Amendment, a defendant must demonstrate a justifiable expectation of privacy.  New Jersey v. T.L.O., 469 U.S. 325, 327 (1985).  That justifiable expectation of privacy consists of two aspects: the defendant must show a subjective expectation of privacy in the contents of the searched property and the expectation must be one that society is prepared to recognize as legitimate.  Hudson v. Palmer, 468 U.S. 517, 526, (1984).

A search of Defendant's residence must be viewed as a particularly invasive intrusion into the Defendant's expectation of privacy.  As the Supreme Court stated in Payton v. New York, 445 U.S. 572 (1980), "the right of the people to be secure in their . . . houses . . . shall not be violated . . . at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" Id., at 586.

Mr. Smith maintained both of the houses now at issue as his residences. He paid the rent for both houses and his name was on both leases. He maintained a bedroom and kept belongings at both locations and therefore had a reasonable expectation of privacy in the houses that agents searched.

Mr. Smith therefore had a reasonable expectation of privacy in the houses that agents searched.

## A.

### The Officers Violated Mr. Smith's Constitutional Protection Against Unreasonable Searches and Seizures When they "Looked Through a Hole in the Stucco Wall".

Warrantless searches are presumed to be unreasonable, and therefore illegal, under the Fourth Amendment, subject only to a few carefully delineated exceptions.  Miranda v. Arizona, 437 U.S. 385, 390 (1966).  Although the plain-view doctrine is an exception to the warrant requirement, a search of protected curtilage is outside of this exception.  See California v. Ciraolo, 476 U.S. 207 (1986).

The determination of whether a search is within the protected curtilage of a home is a factual one.  United States v. Johnson, 256 F.3d 895 (9th Cir. 2001).  In its analysis, the court can consider: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. United States v. Mckeever, 5 F.3d 863 (5th Cir. 1993).

There, the court ruled the area was not protected curtilage because no gate blocked the common drive into the area, and no fence blocked the entrance onto the defendant's property from the common drive. Id. Furthermore, the defendant did not use the area as a yard or garden or storage area or walkway.  Finally, the defendant had allowed brush to grow high to shield the area from view but it was insufficient because there was no fence.  Id.

Although there is no factually identical case in federal precedent, California courts use a McKeever-type analysis when considering these issues.  In People v. Cook, 41 Cal.3d 373(1985), the California Supreme Court used this analysis to suppress evidence of an illegal search and explained, "a government agent without a warrant may not peer through barriers reasonably calculated to shield one's yard from public view, even if the officer is standing in a "public" place."  Id., at 379[quoting People v. Lovelace 116 Cal.App. 3d 541, 554 (1981)].

In People v. Lovelace, the defendant's stepfather constructed a six-foot high wooden plank fence, surrounding the backyard for the purposes of privacy.  116 Cal.App. at 541.  The police officers received a tip that marijuana was growing in the backyard.  Id.  When an officer went to investigate the report, he was unable to see over the fence.  Id.  However, by looking through a small knothole in the fence, the officer saw what he believed were six marijuana plants.  Id.  Based on this information, the magistrate issued a search warrant and the defendant was eventually convicted.  Id.  On appeal, the court reversed the conviction, holding that appellant and his family demonstrated a subjective expectation of privacy, which was objectively reasonable because the fence obviously existed to keep eyes out.  Id.  Accordingly, the police officer violated his Fourth Amendment rights by peering through the knothole.  Id.

Here, the officers looked "through a hole in the stucco wall" to observe bags of Premier Pro-Mix.  Attached as Exhibit B, are photos of the stucco wall at the Euclid Premise.  As is evident from the photos, the wall is high enough to shield anyone from looking over.  Moreover, as seen in the photographs, there is a mesh gate blocking the common drive.  At the time of the search this gate was covered entirely.  Accordingly, in order to see into the yard where the Premier Pro-Mix allegedly was, the officer would

have had to press his face against the stucco wall and look through the vertical slat between the stucco wall and the mesh fence.

Considering the factors enunciated above in <u>Mckeever</u>, the stucco wall here sufficiently shielded the backyard to raise Fourth Amendment protections.  Unlike the facts in <u>Mckeever</u>, as seen in the photos, here the area in question is directly behind the home and only about 30-50 feet from the home itself.  The nature of the uses for the area was residential as it is the backyard and, unlike <u>Mckeever</u>, Mr. Smith **did** use the area as a yard, a storage area, and a walkway.  Moreover, the area is included within a six (6) foot enclosure surrounding the home and the mesh fence seen in the photos was completely covered at the time of the search.  Accordingly, the only peephole into the yard was the vertical slit next to the mesh gate.  Therefore, the wall surrounding Mr. Smith's yard was in place as a "barrier, reasonably calculated to shield one's yard from public view".  <u>Cook</u> at 379.

Without the illegal sighting of the Premier Pro-Mix, there is little evidence to support CS-1's information.  One of the only specifics CS-1 told Officer Kolodzey was that the Euclid Premise contained an "organic grow".  In Officer Kolodzey's expertise, "premier pro-mix is a soil used by organic marijuana grows".  The essential element necessary to corroborate the information he received from CS-1, therefore, was the premier pro-mix Officer Kolodzey saw when he looked through "the hole in the stucco wall".  As discussed below, without this information, the affidavit relies on false electricity records and nothing more to establish probable cause.  Accordingly, the Search Warrant in this case should never have been granted.

Mr. Smith's expectation of privacy was reasonable because it was the area directly surrounding his home.  The officer, therefore, conducted a warrantless search outside any exceptions to the warrant requirements.

Under <u>Wong Sun</u>, any contraband recovered as a result of this search is tainted and must be suppressed as the fruit of the poisonous tree.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-87 (1963).

## III.

## PURSUANT TO FRANKS V. DELAWARE, AN EVIDENTIARY HEARING IS REQUIRED TO PROTECT MR. SMITH'S FOURTH AMENDMENT RIGHTS BECAUSE THE SEARCH WARRANT RELIED ON SEVERAL INTENTIONAL OR RECKLESS FALSE STATEMENTS, WITHOUT WHICH PROBABLE CAUSE COULD NOT HAVE BEEN ESTABLISHED.

In <u>Franks v. Delaware</u>, the Supreme Court held that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause."  <u>United States v. Stanert</u>, 762 F.2d 775, 780 (9th Cir. 1985); <u>Franks v. Delaware</u> 438 U.S. 154 (1978). Where the defendant makes such a showing, the Fourth Amendment requires that a hearing be held at the defendant's request. <u>Franks</u>, at 155-56.

### A.

### <u>The Instant Affidavit Contains Intentionally or Recklessly False Statements.</u>

In the instant case, there are several instances of intentional or reckless misrepresentations of great materiality.

### 1.    The Address Officer Kolodzey Used to Compare Electrical Usage Does Not Exist

In his affidavit, Special Agent Kolodzey says that he subpoenaed records for the electrical usage of a comparable neighboring home, 1406 S. Euclid St.  Those records, according to the affidavit, showed electrical

usage far below that of the Euclid and Gage Premises.  As explained above, however, an independent investigation has shown that 1406 S. Euclid St. is not a valid address.  Accordingly, there was no home used to compare electrical usage and the affidavit contained materially false information, included intentionally or recklessly.

### 2.    Electrical Usage was Not Excessive.

The affiant claimed Southern California Edison records showed excessive electrical use in the Euclid and Gage Premises and thus indicated a marijuana grow existed.  As discussed above, the comparable home does not exist.  Accordingly, it is impossible to know whether electrical use is excessive without comparing a home of similar size and in the neighborhood.  This is a material misrepresentation that is highly prejudicial since claims of excessive electrical use constitute a large portion of affiant's statement of probable cause.

### 3.    Affiant did not Smell Marijuana

Although CS-1 claimed there were over 400 plants growing at the Euclid Premise, nowhere in the officer's affidavit does he mention that either of them noticed the distinct odor of marijuana.  This is especially significant since the officers visited the home on two separate days.

### B.

### A Franks Hearing is Required Because the Affidavit Purged of its Falsities Would not be Sufficient to Support a Finding of Probable Cause

Justice Brandeis stated in dissent in <u>Olmstead v. United States</u>, 277 U.S. 438 (1928), that the makers of our Constitution enacted the Fourth Amendment "to protect Americans in their beliefs, their thoughts, their emotions, and their sensations." <u>Id.</u>, at 478  The concept of "probable cause" is central to the protection of this right.

The totality of the circumstances approach is the prevailing test for determining whether probable cause exists.  Illinois v. Gates, 462 U.S. 213, 218 (1983).  Moreover, unverified information from an untested or unreliable informant does not establish probable cause for a search warrant unless the affiant provides underlying circumstances as to why the informant is credible or his information reliable.  Franks, supra, 438 U.S. at 165.

In this case, a confidential informant ("CS-1") seeking to obtain a reduced sentence claimed Steele Smith was cultivating marijuana at the Euclid Premise.  CS-1 did not tell agents that Mr. Smith was cultivating marijuana at the Gage premises, or anything at all about the Gage Premises because CS-1 did not know about the Gage Premises.

There is nothing in the affidavit to indicate CS-1 was reliable or tested.  Since the informant was untested, the officer had a duty to verify the reliability of the information regarding the Euclid and Gage Premises.

**1.     Facts stated in the Officer's affidavit do not corroborate CS-1's claims as to the Euclid Premises.**

As set forth in the affidavit, CS-1 said that there were approximately 400 plants at various stages of growth in the rooms on the south-side of the house.  CS-1 also claimed that the garage at the premise was used for mature plants.  Finally, CS-1 said he knew of an Alexander that helped Steele Smith grow marijuana.

To corroborate CS-1's information, the officers went to the Euclid Premise.  While they were there, they saw a car registered to Alexander Valentine and that the southern windows were covered from the inside.  Although CS-1 mentioned "Alexander", this is a pedestrian fact and not sufficient, on its own, to corroborate CS-1's tip in any essential respects.  As discussed below, the warrant purged of falsities and the illegal search is left

15

with only these two factors to corroborate CS-1's statements with regard to the Euclid premises.

CS-1 said there were over 400 plants being grown at the Euclid premises with mature plants in the garage.  Nowhere in the affidavit does Officer Kolodzey indicate he observed evidence corroborating CS-1's statements that the garage was used for mature plants.  Moreover, the affiant never even smelled the distinct odor of marijuana.  Accordingly, the only remaining information establishing probable cause is that the southern windows were covered from the inside, the electrical bills and the Premier Pro-Mix observed by the officers through the hole in the stucco wall.

Despite affiant's statements to the contrary, Southern California Edison records failed to show habitual, excessive electrical use in comparison to similar sized homes.  As discussed above, affiant failed to search for the electricity records of a valid address.  Instead, affiant used an invalid address and compared usage.  Accordingly, affiant could not know whether the Euclid Premise indeed used excessive electricity or not, and therefore there was no excessive electrical usage.

Finally, as discussed throughout this motion, the premier pro-mix was observed during a warrantless, unconstitutional search and thus cannot be used to establish probable cause.

In Gates, the Supreme Court took care to indicate that flexibility, not laxity, is the proper approach when reviewing a warrant's sufficiency. Gates, supra, 462 U.S. at 218.  "In order to ensure . . . an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." Id., at 239.  Aside from an informant's unconfirmed tips, an illegal search, and false electricity records, there was no evidence to indicate illegal activity here.  The affidavit states that two different officers visited Mr. Smith's

home.  Neither of them smelled marijuana and could not find corroborating evidence without conducting an illegal search.  Accordingly, this warrant would not have been granted if the probable cause statement had been truthful and absent an illegal search, thus satisfying the second prong required by <u>Franks</u>.

> **2.** **The Confidential Informant's information could not have been corroborated as to the Gage Premises because he/she did not provide any.**

The reports indicate that agents did not receive any information from CS-1 regarding the Gage Premises. Rather, agents set out on a fishing expedition, learning Theresa Smith's home address from the Department of Motor Vehicles and simply assuming that marijuana was being cultivated at that address.

Therefore, neither the electrical usage of the phantom address nor the trash search can be said to have corroborated anything said by CS-1.

It is well established that "common rumor or report, suspicion, or even 'strong reason to suspect'" have historically been inadequate to establish probable cause and "that principle has survived to this day" in the law of the Fourth Amendment. <u>Henry v. United States</u>, 361 U.S. 98, 101 (1959).

In <u>Brinegar v. United States</u>, 338 U.S. 160(1949), the Court explicitly stated that probable cause means "more than bare suspicion" and "exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense had been or is being committed." <u>Id.</u>, at 175-176 [Quoting in part from <u>Carroll v. United States</u>, 267 U.S. 132, 162 (1925)]. <u>See</u>: <u>United States</u>

v. Pinion, 800 F.2d 976, 979 (9th Cir. 1986), cert. denied, 480 U.S. 936 (1987); United States v. Howard, 758 F.2d 1318, 1320 (9th Cir. 1985).

Here, the officers did not have any informant's tip regarding activity at the Gage Premises, and were acting merely on "bare suspicion," which was based on an electrical usage comparison of a non-existent property.

## C.

**Good Faith Does Not Apply to Warrants Where There is an Intentional Misrepresentation or Reckless Disregard for the Truth in an Affidavit.**

Where a search warrant is invalid because the supporting affidavit does not establish probable cause, relevant inquiry under the Leon good faith exception to the exclusionary rule is whether a reasonable and well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for warrant. United States v. Leon, 468 U.S. 897, 922, (1984).

In United States v. Crews, 502 F.3d 1130 (9th Cir. 2007), the Ninth Circuit Court of Appeals specified four circumstances wherein the good faith exception does not apply, one of which is "where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement." Id., at 1136.

As discussed above, the affiant here intentionally or recklessly misrepresented facts in the affidavit of probable cause in that he 1) did not use a valid address to compare electrical usage 2) and conducted an illegal search by looking though the hole in the stucco wall to see the Premier Pro-Mix.  Defendant maintains that no officer could reasonably rely in "good faith" upon the affidavit after misrepresenting the facts instead of supplying accurate information.  Accordingly, the good faith exception does not apply.

///

///

In the instant case, the Court should not find that the good faith exception applies because law enforcement intentionally or recklessly misrepresented information in the warrant.

## IV.

## AFTER A SUBSTANTIAL PRELIMINARY SHOWING, THE INSTANT CASE REQUIRES A FRANKS HEARING.

When the defendant has made a substantial preliminary showing that an affidavit contains intentionally or recklessly false statements, and the affidavit purged of its falsities would not be sufficient to support a finding of probable cause, the Fourth Amendment requires a hearing be held at the defendant's request. Franks v. Delaware, 438 U.S. 154 (1978).  If after the limited evidentiary hearing the court concludes the magistrate or judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, then suppression is an appropriate remedy. Id.; See Leon, supra.

Clear proof of deliberate or reckless misstatements or omissions and materiality is not required.  See United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985).  A Franks hearing requires only a substantial showing of deliberate or reckless misstatement or omissions, just as Mr. Smith has made here

In Stanert, the court found four false statements in an affidavit to warrant a Franks hearing in the lower court.  Similarly, in the instant case, the affiant misrepresented, omitted, and falsified several statements.  In summary, there was no excessive electrical use, no smell of marijuana to substantiate the informant's claim of a grow, no admissible evidence of Premier Pro-Mix, and no information regarding the Gage Premises other than two leaves, which, alone, do not supply probable cause of cultivation.

Therefore, after reviewing affiant's **actual** evidence, it is clear that probable cause did not exist, and the Court here should traverse the search warrant, and grant a <u>Franks</u> hearing.

**V.**

**CONCLUSION**

Based on the foregoing, Defendant Steele Smith requests this Court to grant his Motion to Suppress the evidence recovered during the search of his residences

and to Quash the Search Warrant thereby rendering all evidence seized as a result of the search of said residences inadmissible at trial.

DATED:     September 21, 2009          Respectfully submitted,
                                       SHERMAN & SHERMAN
                                       A Professional law Corporation

                                          /s/ C.O'Neill
                                       _____
                                       COLIN O'NEILL
                                       Attorney for Defendant
                                       STEELE SMITH

## DECLARATION OF STEELE SMITH

I, Steele Smith, declare and say:

l.      I am the defendant in United States v. Smith, Case No. SA-CR-07-264-01-CJC.  If called as a witness, I could and would competently testify to the following facts based upon my personal knowledge.

2.      I am making this declaration under the authority of Simmons v. United States, 390 U.S. 377 (l968).  It is my understanding that nothing I say in this declaration or the fact of its existence can or will be used against me or admitted into evidence in the prosecution's case in chief.  This declaration is made exclusively in support of my motion to suppress evidence pursuant to Rules 12(b)(3)(C) and 41(h), Federal Rules of Criminal Procedure and Rule 12-1.1 of the local criminal rules of this court.

3.      On or about November 1, 2007, I was maintaining as my residences 1506 Euclid Street in Fullerton, California, and 606 West Gage Street in Fullerton, California. My name was on both of the leases of these two single-family residences, at both of which I maintained a bedroom and kept belongings. I was paying rent to live at both locations and had the right to invite others to and exclude others from all parts of the residences.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

 Executed this 21st day of September, 2009, at Orange County, California.


/s/ S.Smith_____
STEELE SMITH